IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISHANA BURKS | ) | |
| 1261 Argonne | ) | CASE NO.: |
| South Euclid, Ohio 44121 | ) | |
| | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR VIOLATIONS OF |
| v. | ) | THE FAIR LABOR STANDARDS ACT |
| | ) | AND THE OHIO MINIMUM FAIR |
| TOMO HIBACHI RESTAURANT AND | ) | WAGE STANDARDS ACT |
| LOUNGE, LLC | ) | |
| 1293 West 9th Street | ) | |
| Cleveland, Ohio 44113 | ) | |
| | ) | (Jury Demand Endorsed Herein) |
| **Serve also:** | ) | |
| Valentina Lucic, Statutory Agent | ) | |
| 7433 Ford Drive | ) | |
| Mentor, Ohio 44060 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VELIMIR LUCIC | ) | |
| 7433 Ford Drive | ) | |
| Mentor, Ohio 44060 | ) | |
| | ) | |
| Defendants. | | |

Plaintiff, Chrishana Burks, by and through undersigned counsel, as his Complaint against

Defendants, states and avers the following:

## PARTIES

1. Burks is an individual residing in Cuyahoga County, Ohio.

2. Tomo Hibachi Restaurant and Lounge, LLC ("Tomo") is a for-profit limited liability

   organization organized under the laws of the State of Ohio whose principal place of business

   is located at 1293 West 9th Street, Cleveland, Ohio 44113.

3. Lucic is an individual believed to be residing in Lake County, Ohio.

1

4. At all times referenced herein, Lucic supervised and/or controlled the employment of Burks with Tomo and acted directly or indirectly in the interest of Tomo in relation to its employees, including controlling and/or establishing its day to day operations and respective compensation practices; therefore, Lucic is an employer within the meaning of Article II, Section 34a of the Ohio Constitution and the Fair Labor Standards Act ("FLSA"), 29 § U.S.C. 203(d).

## PERSONAL JURISDICTION

5. Defendants hire citizens of the state of Ohio, contracts with companies in Ohio, and own or rent property in Ohio. As such, the exercise of personal jurisdiction over Defendants comports with due process.

6. Burks performed work in this judicial district, was paid unlawfully by Defendants pursuant to work performed in this district and/or was hired out of this district.

7. This cause of action arose from or relates to the contacts of Defendants with Ohio residents, thereby conferring specific jurisdiction over Defendants.

## SUBJECT MATTER JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Burks's state law claims under the Ohio Minimum Fair Wages Standards Act ("OMFWSA") and the Ohio Constitution because those claims derive from a common nucleus of operative facts.

10. Venue is proper in this District because Defendants do a sizeable portion of their business in this District, and many of the wrongs herein alleged occurred in this District.

**COVERAGE**

11. At all times referenced herein, Tomo formed a single enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r); and formed a single enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise at all times hereinafter mentioned had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise had an annual gross volume of sales made or business done of not less than $500,000.00.

12. At all times material to the Complaint, Burks and those similarly-situated directly participated in the actual movement of things in interstate commerce by regularly using instrumentalities of interstate commerce in their work, namely by ordering equipment, material, and supplies, and further, by shipping and/or exporting products out of Ohio.

13. At all material times, Defendants were employers within the meaning of the FLSA and the OMFWSA.

**FACTS**

14. Defendants operate an hibachi and sushi restaurant and lounge located in Cleveland, Ohio.

15. Burks is female.

16. Burks is an African American.

17. Burks is a former employee of Defendants.

18. Burks was hired by Defendants on or about January 29, 2018.

19. Burks was employed by Defendants as a Hibachi Chef.

20. Burks did not have the authority to hire and never hired any employees for Tomo.

3

21. Burks did not have the authority to fire and never fired any employees for Tomo.

22. Burks did not qualify for the Administrative Exemption to the FLSA/OMFWSA based on her job duties because she was not empowered to use her discretion or independent judgment to make decisions with respect to matters of significance regarding Tomo's business.

23. Burks' primary job duties included preparing and cooking food on a Hibachi grill for customers.

24. At all times referenced herein, Defendants treated Burks as an exempt salary employee and paid her a salary of $39,000 per year.

25. Burks' work was integral to Tomo's business.

26. Burks' employment was not temporary and had no fixed end-date.

27. Burks was treated as an at-will employee.

28. Burks was not required to use managerial skills to realize a profit or a loss.

29. Burks' pay was deducted if she was late.

30. Burks was economically dependent on Tomo and did not invest her own money, equipment, or supplies into the business.

31. Burks' job duties did not require special skills or particularized education or licensing.

32. Burks' did perform tricks at the tables with her cooking utensils as part of her job.

33. At all times material to the complaint, Defendants controlled Burks' employment.

34. Defendants established the terms and rules of Burks' employment.

35. Burks was not conducting her own business while in the employ of Defendants.

36. Despite being labeled by Defendants as an exempt salary employee, Burks was in reality a non-exempt employee under the FLSA.

37. Defendants misclassified Burks that so they could avoid making overtime payments to Burks.

38. At all times referenced herein, Defendants paid Burks a salary of $750.00 per week.

39. Burks' salary was intended to compensate her to work up to 40 hours per week.

40. Despite being labeled as a salary employee, Defendants reduced Burks pay if she did not work all hours of a scheduled shift.

41. Even though Burks was paid a salary, she was in reality a non-exempt employee under the FLSA and the OMFWSA.

42. Defendants did not require Burks to record her hours of work.

43. Defendants did not record Burks' hours of work.

44. At all times referenced herein, Burks worked greater than 40 hours per week.

45. As a result of the above work performed by Burks, he regularly worked for Tomo 55 to 63 hours a week.

46. Defendants failed to pay Burks overtime for the hours she worked each week in excess of 40 per week.

47. On numerous occasions throughout her employment, Burks was hugged by Lucic.

48. Burks repeatedly told Lucic not to hug her.

49. Lucic ignored Burks' requests to not hug her.

50. On numerous occasions, Lucic kissed Burks.

51. Burks repeatedly told Lucic not to kiss her.

52. Lucic ignored Burks' requests to not kiss her.

53. On multiple occasions, Lucic made inappropriate sexual comments to and about Burks.

54. On at least one occasion, when Burks stated that she was hot, Lucic informed Burks that "that means you are going to have good pussy tonight. Hot pussy is good pussy." ("Hot comment")

55. The Hot Comment made Burks feel uncomfortable.

56. After seeing a picture of Burks, Lucic made comments about how large Burks' breasts were.

57. Lucic asked Burks why he could not see the size of her breasts through her chef coat.

58. Throughout Burks employment, Lucic repeatedly made comments such as "make pussy great again" and "make pussy hairy again."

59. Lucic told Burks that he was "going to teach her how to be a good wife."

60. Lucic told Burks that "any guy can fuck you, but you need to learn how to be a wife."

61. Lucic repeatedly made comments about how "sexy" he thought Burks and other female employees were.

62. Lucic made derogatory comments about female customers as well as female employees such as Burks.

63. On at least one occasion, a group of homosexual women were dining at Tomo and Lucic called these customers "dyke bitches" and stated that "men need to dress like men and women need to dress like women."

64. Lucic asked a homosexual male employee to "suck his dick."

65. Burks repeatedly asked Lucic to stop making these lewd comments to and around her.

66. Lucic continued to make lewd comments to and around Burks after Burks requested that he stop.

67. Defendants did not reprimand Lucic for lewd comments made to Burks.

68. Defendants did not reprimand Lucic for lewd comments made about Burks.

69. Defendants did not reprimand Lucic for hugging Burks against her will.

70. Defendants did not reprimand Lucic for kissing Burks against her will.

71. Defendants did not reprimand Lucic for making Burks and female employees provide back massage to Lucic while working at Tomo.

6

72. Lucic repeatedly made derogatory comments about other female employees and customers.

73. Burks inquired where a female bartender was.

74. Lucic informed Burks that "I fired that big tittie bitch" when Burks inquired about the female bartender.

75. Lucic repeatedly referred to females as "bitches."

76. Throughout her employment, Burks was told by Lucic that Burks looked "too black" when she wore her hair in braids.

77. Throughout her employment, Burks and other African American employees were referred to by Lucic as being "his slaves."

78. Lucic told Burks that a table of African-American women were "ghetto black bitches."

79. On at least one occasion, Lucic showed Burks a video of people in Great Britain being derogatory about African American people.

80. Lucic thought that the video making fun of African Americans was hilarious.

81. Burks was highly offended by the behavior in the video Lucic forced her to watch.

82. Burks was highly offended by Lucic's behavior with the video of people making fun of African Americans that Lucic forced Burks to watch.

83. On or about June 11, 2018, Defendants threatened to deduct $500 from Burks' pay for misplaced sushi salmon.

84. Burks' informed Defendants that she was not authorizing any withholding of her pay by Defendants.

85. On or about July 1, 2018, Burks burned her hand and had to leave one hour early.

86. Defendants' reduced Burks pay due to her leaving one hour before her scheduled shift was over.

7

87. Burks' employment with Defendants ended on or about July 15, 2018.

88. Defendants terminated Burks because she refused to work without being paid for the work she completed.

89. Defendants terminated Burks because she engaged in protected activity by complaining about issues with her wages.

90. Defendants terminated Burks because she engaged in protected activity by reporting discrimination based on race.

91. Defendants terminated Burks because she engaged in protected activity by reporting sexual harassment.

92. Defendants terminated Burks because she engaged in protected activity by reporting discrimination based on gender.

93. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94. Defendants' conduct as alleged herein is so egregious that Defendants cannot establish that they had a good faith belief that their conduct reasonably complied with the FLSA.

## COUNT I: FAILURE TO PAY OVERTIME IN VIOLATION OF THE FLSA
### (29 U.S.C. § 207)

95. Burks restates each and every prior paragraph of this Complaint, as if it were fully restated herein and further alleges as follows:

96. The FLSA requires each covered employer such as Defendants to compensate all non-exempt employees at a rate of not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week.

97. Burks was not exempt from the right to receive overtime pay under the FLSA during her employment with Tomo.

98. Burks is entitled to be paid overtime compensation for all overtime hours worked.

99. At all times relevant to this Complaint, Defendants had a policy and practice of failing and refusing to pay overtime to its employees for their hours worked in excess of 40 hours per week.

100. As a result of Defendants' failure to properly compensate their employees, including Burks, at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a work week, Defendants violated the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 207(a)(1) and § 215(a).

101. Burks is entitled to damages in the amount of her unpaid overtime compensation, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), and other such legal and equitable relief as the Court deems just and proper, including her attorneys' fees and costs.

102. At all times relevant to this action, Defendants willfully failed and refused to pay Plaintiff overtime wages required by the FLSA, causing Plaintiff to suffer damage in amounts to be proven at trial.

103. Defendants either recklessly failed to investigate whether their failure to pay Burks an overtime wage for the hours she worked in excess of 40 per week during the relevant time period violated the Federal Wage Laws of the United States, they intentionally misled Burks to believe that Defendants were not required to pay her overtime wages, and/or Defendants concocted a scheme pursuant to which they deprived Burks the overtime pay she earned.

104. Defendants' conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

105. Defendants violated the FLSA without a good faith belief that their conduct was lawful.

106. Burks requests recovery of her attorney's fees and costs associated with this cause as

provided by 29 U.S.C. § 216(b).

## COUNT II:  VIOLATION OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT, O.R.C. § 4111.03, *et seq*, BASED ON FAILURE TO PAY OVERTIME.

107.    Burks incorporates by reference the allegations in the preceding paragraphs.

108.    At all relevant times, Defendants have been, and continue to be, an "employer" within the meaning of the OMFWSA.

109.    At all relevant times, Defendants have employed and continue to employ, "employees," within the meaning the OMFWSA.

110.    Burks was an employee of Defendants as that term is defined by the OMFWSA.

111.    Ohio R.C. § 4111.03 provides that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA]…"

112.    Defendants failed to pay Burks overtime for hours she worked in excess of 40 per week.

113.    In denying Burks overtime compensation, Defendants violated the OMFWSA and Article II, Section 34a of the Ohio Constitution.

114.    As a direct and proximate result of Defendant's unlawful conduct, Burks has suffered and will continue to suffer a loss of income and other damages.

115.    Having violated the OMFWSA, Defendants are joint and severally liable to Burks pursuant to O.R.C. § 4111.10 for the full amount of her unpaid overtime and for costs and reasonable attorneys' fees. Additionally, Defendants are joint and severally liable to Burks for an amount equal to twice his unpaid wages.  O.R.C. § 4111.14(J).

### COUNT III: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq.* and O.A.C. § 4112-5-05(J)(1)(c)

116.    Burks restates each and every paragraph of this Complaint as though it were fully restated herein.

117.    At all times during Burks's employment, the Ohio Fair Employment Practice Act, R.C. § 4112.01 *et seq.*, and O.A.C. § 4112-5-05(J)(1)(c) applied to her and Defendants.

118.    Burks is a member of a statutorily protected class based upon her sex under R.C. § 4112.02 *et seq.*

119.    Throughout Burks's employment, Burks fully and competently performed her essential job duties.

120.    Burks was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

121.    Defendants created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

122.    Burks was sexually harassed by Lucic when he made comments about Burks' appearance, made lewd comments to and about Burks, when he hugged Burks, when he kissed Burks, and when he made Burks give him massages while at Tomo.

123.    Defendants' sexual harassment was sufficiently severe or pervasive to affect the terms, conditions, or privileges of Burks' employment.

124.    Defendants' actions had the purpose and/or effect of unreasonably interfering with Burks' job duties and created an intimidating, hostile, and offensive working environment.

125. Lucic's conduct had the purpose and/or effect of unreasonably interfering with Burks' job duties and created an intimidating, hostile, and offensive working environment.

126. Defendants created and sustained an environment of severe and pervasive sexual harassment at Tomo.

127. Defendants violated R.C. § 4112.01 *et seq.* by creating and sustaining an environment of severe and pervasive sexual harassment for Burks.

128. Defendants violated R.C. § 4112.01 *et seq.* because Lucic was permitted to harass Burks because of Burks' sex.

129. Defendants' actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of R.C. § 4112.01, *et seq.*

130. Defendants' discrimination against Burks based on her sex violates R.C. § 4112.01 *et seq.*

131. As a direct and proximate cause of Defendants' conduct, Burks suffered and will continue to suffer damages.

132. As a direct and proximate cause of Defendants' conduct, Burks is entitled to all damages provided for in R.C. § 4112.01 *et seq.*, and R.C. § 4112-5-05(J)(1)(c), including liquidated damages, costs, and reasonable attorney's fees.

## COUNT IV: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

133. Burks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

134. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge,

testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

135.    In *Greer-Burger v. Temesi*, the Ohio Supreme Court held that filing an objectively baseless counter claim in response to a lawsuit brought under R.C. § 4112.02 is retaliatory.[1]

136.    As a result of Defendants' discriminatory conduct described above, Burks complained about experiencing harassment on the basis of sex and gender.

137.    Burks engaged in protected activity by complaining about the Lucic's repeated lewd comments, unwanted sexual touching, unwanted sexual advances, and/or unwanted sexual comments.

138.    Burks engaged in protected activity by complaining about the Lucic's repeated derogatory comments about African American.

139.    Subsequent to Burks reporting sexual harassment, Burks was terminated without just cause.

140.    Burks was terminated because she engaged in protected activity.

141.    Burks was terminated in retaliation for engaging in protected activity.

142.    Burks incurred emotional distress damages as a result of being terminated due to retaliation.

143.    As a direct and proximate result of Defendants' wrongful conduct, Burks is entitled to all damages provided for R.C. § 4112.051, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT V: QUID PRO QUO SEXUAL HARASSMENT

---

[1] 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶¶ 13-16 (2007)

144.     Burks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

145.     Burks is a member of a statutorily protected class based upon her sex under R.C. § 4112.02 *et seq*.

146.     During her employment, Burks was subjected to unwelcome sexual harassment in the form of sexual advances, unwanted touching and kissing, and repeated lewd comments to and about Burks by her supervisor, Lucic.

147.     Burks's submission to the unwelcome sexual advances by Lucic was an express or implied condition for receiving job benefits and/or continued employment. *See* R.C. § 4112-5-05(J)(1)(a).

148.     When Burks repeatedly requested Lucic stop making lewd comments, kissing her, hugging her, and making her give Lucic massages, he terminated her employment.

149.     Defendants terminated Burks, in part, because she had rejected Lucic's sexual advances and requested he stop making lewd comments.

150.     As a direct and proximate cause of Defendants' conduct, Burks suffered and will continue to suffer damages.

## COUNT VI: UNLAWFUL RETALIATION IN VIOLATION OF 29 U.S.C. § 215(A)(3).

151.     Burks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

152.      On the same day that Burks stated that she would not work without pay, Defendants retaliated against Burks by terminating her employment.

153.      29 U.S.C. § 215(a)(3) makes it unlawful for an employer to retaliate against an employee who seeks to enforce his rights under the FLSA.

14

154. Defendants violated 29 U.S.C. § 215(a)(3) of the FLSA and showed reckless disregard of the provisions of the FLSA concerning retaliation by taking adverse actions against Burks because she instituted complained about her pay.

155. By reason of the foregoing acts of Defendants, Burks has suffered damages and has suffered from severe emotional distress.

156. Burks is entitled to recover damages for the actions of Defendants.

157. Burks is entitled to recover liquidated damages pursuant to the Fair Labor Standards Act.

158. Burks requests recovery of her attorney's fees and costs associated with this cause of action as provided by 29 U.S.C. § 216(b).

**COUNT VII: UNLAWFUL RETALIATION BASED ON PROTECTED WAGE COMPLAINTS IN VIOLATION OF ARTICLE II, SECTION 34A OF THE OHIO CONSTITUTION.**

159. Burks restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

160. On the same day that Burks stated she would not work without pay, Defendants retaliated against Burks by terminating her employment.

161. Pursuant to Article II, Section 34a of the Ohio Constitution, "[n]o employer shall discharge or in any other manner discriminate or retaliate against an employee for exercising any right under this section or any law or regulation implementing its provisions or against any person for providing assistance to an employee or information regarding the same."

162. Defendants' termination of Burks employment constitutes a retaliatory adverse action against Burks in violation of Article II, Section 34a of the Ohio Constitution.

163. As a direct and proximate cause of Defendants' retaliatory conduct, Burks suffered and will continue to suffer damages.

15

## COUNT VIII: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01, *ET SEQ.*

164.    Burks restates each and every prior paragraph of this Complaint, as if it were fully restated

herein.

165.    At all times relevant during her employment, Burks, as an African-American, was a

member of a statutorily-protected class under R.C. § 4112.01, *et seq.*

166.    Defendants treated Burks differently from other similarly situated employees based on her

race.

167.    Defendants terminated Burks based on her race.

168.    Defendants violated R.C. § 4112.01, *et seq.* by discriminating against and terminating

Burks based on her race.

169.    As a direct and proximate cause of Defendants' conduct, Burks suffered and will continue

to suffer damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chrishana Burks requests judgment against all Defendants and

for an Order:

   a.  Awarding Plaintiff unpaid minimum wages and overtime wages and an additional equal
       amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

   b.  Awarding damages, including actual, general, special, incidental, statutory, punitive,
       treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

   c.  Issuing a declaratory judgment that the practices complained of herein are unlawful under
       the FLSA, 29 U.S.C. §§ 201 et seq..;

   d.  Issuing a declaratory judgment that Defendants violated the recording-keeping
       requirements of the FLSA, 29 U.S.C. §§ 201 et. seq., including 29 U.S.C. § 211(c) and §
       215(a), and the OMWFSA, R.C. § 4111.08;

   e.  Issuing an injunction prohibiting Defendants from continued unlawful practices, policies
       and patterns set forth herein;

f. An award against each Defendant for compensatory and monetary damages to compensate Plaintiff for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

g. An award of punitive damages against each Defendant in an amount in excess of $25,000;

h. Awarding pre-judgment and post-judgment interest as provided by law;

i. Awarding reasonable attorneys' fees and costs; and

j. Awarding such other and further relief that this Court deems appropriate.


Respectfully submitted,

*/s/ Tina M. Scibona*
Chris P. Wido (0090441)
Tina M. Scibona (0092008)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, Ohio 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email: chris.wido@spitzlawfirm.com

*Attorneys for Plaintiff Chrishana Burks*


## JURY DEMAND

Plaintiff Chrishana Burks demands a trial by jury by the maximum number of jurors permitted.


*/s/ Tina M. Scibona*
Chris P. Wido (0090441)
Tina M. Scibona (0092008)
**THE SPITZ LAW FIRM, LLC**

17